UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | 5:25-cv-03384-AH-SK | Date | December 19, 2025 |
| Title | *Rajesh LNU v. Mark Bowen et al.* | | |

Present: The Honorable    Anne Hwang, United States District Judge

| Yolanda Skipper | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:    (IN CHAMBERS) ORDER GRANTING PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 2)**

Before the Court is a Motion for a Temporary Restraining Order ("TRO") filed by Petitioner Rajesh LNU ("Petitioner"). Mot., Dkt. No. 2. Respondents Mark Bowen, Todd Lyons, Kristi Noem, and Pamela Bondi ("Respondents") filed an opposition. Opp'n, Dkt. No. 13. The Court deems the Motion appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); L.R. 7-15. For the following reasons, the Court **GRANTS** Petitioner's Motion.

## I.    BACKGROUND[1]

Petitioner, a native and citizen of India, entered the United States without inspection on April 20, 2023. Pet. ¶¶ 1, 15. Petitioner was briefly detained by the Department of Homeland Security ("DHS"), and then released on Order of Release on Recognizance shortly thereafter. *Id.* ¶ 1; Ex. A, Dkt. No 1-2 at 1. The conditions of release required Petitioner to be placed on Alternative to Detention monitoring and mandated that Petitioner check in with Immigration and Customs

---

[1] The Court summarizes the relevant facts based on the allegations in Petitioner's Verified Petition for Habeas Corpus ("Petition"). Pet., Dkt. No. 1.

Enforcement ("ICE") every month.  Pet. ¶ 1.  DHS served Petitioner with a Notice to Appear ("NTA"), which charged him with removability pursuant to the Immigration and Nationality Act as an "alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General."[2]  *Id.* ¶ 2; 8 U.S.C. § 1182(a)(6)(A)(i).[3]  Following his release from detention, Petitioner filed a Form I-589 application for asylum with the immigration court.  Pet. ¶ 3.  Petitioner was detained by ICE at his regularly scheduled appointment and claims that he has been denied a bond hearing.  *Id.* ¶¶ 1, 3-4.  Petitioner claims that this denial was based on the Board of Immigration Appeals' ("BIA") decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), which sided with DHS's recent position that all noncitizens who have entered the United States without inspection are subject to mandatory inspection under Section 1225(b) and are ineligible for release on bond.  *Id.* ¶¶ 4, 25-26.[4]

On December 15, 2025, Petitioner filed the Petition against Respondents, seeking a writ of habeas corpus.  *See generally id.*  On the same day, Petitioner filed the instant Motion for a TRO requiring Respondents to release him from custody or to provide him with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a).  *See generally* Mot.

## II.   LEGAL STANDARD

A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  Under *Winter*, a plaintiff seeking a TRO must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an

---

[2] The Court observes that in the Motion, Petitioner claims that DHS issued the NTA on April 19, 2023, but this is one day before Petitioner claims to have entered the country.  *See* Pet. ¶ 1.  The Court instructs Petitioner to ensure that all information presented in its papers are accurate, but notes that the exact date that DHS issued the NTA is not required for the Court to rule on the instant Motion.
[3] Though Petitioner cites to the relevant section of the Immigration and Nationality Act, the Court here cites to the relevant section of the U.S. Code.
[4] The Court has read and considered the BIA's opinion, which is not binding on the Court.  For the reasons discussed below, the Court declines to follow this ruling.

---

injunction." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014) (citing *Winter*, 555 U.S. at 20). Because the "first factor is a threshold inquiry and is the most important factor," a court "need not consider the other factors if a movant fails to show a likelihood of success on the merits." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal quotation marks and citations omitted). When "the nonmovant is the government, the last two *Winter* factors merge." *Id.* (internal quotation marks and citations omitted).

Courts in the Ninth Circuit also employ a "sliding scale" approach, also known as the "serious questions" test, in which the four *Winter* elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, "'serious questions going to the merits" and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.* Serious questions are those that "cannot be resolved one way or the other at the hearing on the injunction because they require more deliberative investigation. Thus, parties do not show serious questions when they raise a merely plausible claim." *Assurance Wireless USA, L.P. v. Reynolds*, 100 F.4th 1024, 1031 (9th Cir. 2024) (internal quotation marks and citations omitted).

## III.    DISCUSSION

Petitioner has demonstrated that he is entitled to the requested TRO. Numerous district court judges, including at least ten in this District, have addressed the same legal issues presented here and have granted similar requests for TROs. *See Zavala v. Noem*, 2025 WL 3514086, at *2 (C.D. Cal. Dec. 4, 2025) (collecting cases). The Court finds the reasoning in those opinions to be persuasive. Accordingly, the Court concludes that: (1) 8 U.S.C. § 1252(b)(9) and § 1252(g) do not present a jurisdictional bar. *See Jennings v. Rodriguez*, 583 U.S. 281, 292-95 (2018); (2) Petitioner is likely to succeed on the merits of his claim that his ongoing detention under 8 U.S.C. § 1225(b)(2) is unlawful because 8 U.S.C. § 1226(a) governs his detention; (3) Petitioner is likely to suffer irreparable injury in the absence of a TRO because detention constitutes a loss of liberty that is irreparable; and (4) the balance of equities and public interest weigh in favor of a TRO because "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022).

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Petitioner's Motion for a TRO.

1. Respondents are enjoined from continuing to detain Petitioner unless he is provided with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) within seven (7) days of this Order;
2. Respondents shall have until December 27, 2025 to show cause, in writing, as to why the Court should not issue a preliminary injunction in this case.  Petitioner may file a response on or before December 29, 2025.  The Court sets a hearing on whether a preliminary injunction should issue for January 2, 2026 at 9:00 am; and
3. Respondents are enjoined from transferring, relocating, or removing Petitioner from the Central District of California without further order of the Court.

**IT IS SO ORDERED.**